TIMOTHY M. BURGESS
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9
Anchorage, Alaska  99513-7567
(907) 271-5071
Fax: (907) 271-1500
E-mail: Bryan.Schroder@usa.usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:05-cr-63-JWS |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S TRIAL** |
| v. | ) | **MEMORANDUM** |
| | ) | |
| KRISTER "KRIS" SVEN | ) | |
| EVERTSON,   a.k.a. "Chris | ) | |
| Ericksson", a.k.a. "Krister | ) | |
| Ericksson", | ) | |
| | ) | |
| Defendant. | ) | |

## I.     INTRODUCTION

The defendant is charged with three counts of willfully failing follow

Department of Transportation regulations when offering hazardous materials for

transportation.  Trial is set to begin on Monday, January 9, 2006.  The government's case in chief should take no longer than two days.

## II.   STATEMENT OF THE CASE

### A.   Case Summary

This case involves three sales of a substance commonly referred to as Sodium metal.  Sodium metal is the elemental form of Sodium, and by appearance it is a soft metal.   Sodium metals are a hazardous material regulated by the U.S. Department of Transportation as a Division 4.3 *Dangerous When Wet* solid and are defined as such under 49 CFR §172.101, the Hazardous Materials Tables.  Pursuant to the Hazardous Materials Transportation Authorization Act (the "Hazmat Act")  (49 USC §§5101 *et seq*), the U.S. Department of Transportation has promulgated regulations under 49 CFR §§ 172 and 173 that clearly define the packaging, identifying, marking, labeling and placarding  requirements that must be followed by any person offering hazardous materials for shipment.  Pursuant to 49 USC §5124, it is a felony violation to willfully violate these regulations.

When exposed to water or moist air, sodium reacts violently, breaking the oxygen-hydrogen bond in the water, thus producing an explosive release of hydrogen gas.  The heat from the reaction can then cause the hydrogen gas to

US v. EVERTSON
3:05-cr-63-JWS                      2

ignite.  Scientists with the FBI Hazardous Material Response Unit described the

reaction and subsequent explosion of a half-pound of Sodium metal as

comparable to the explosion produced by an average car bomb.

From September 2003 to April 2004, the Defendant made 37 documented

sales of Sodium metal using ebay, the internet service that allows private sellers

to advertise merchandise to buyers.  Three of those sales are the basis for the

charges in this case, one of which was an undercover purchase by government

agents.  In each of the instances, the Defendant offered Sodium metals for

transportation on a common carrier without properly packaging the hazardous

material, and with none of the required papers, markings, labeling, and placarding

to indicate to shippers that the package contained a hazardous material.

The Defendant, on his ebay seller's page, correctly identified an

appropriate shipping exception under the DOT Hazardous Material

Transportation Regulations, 49 C.F.R. § 173.13.  Under this exception, persons

shipping less than 6.25 lbs of hazardous material, including Sodium,  are excused

from some of the labeling requirements and all of the placarding requirements of

standard shipments.  In return, the shipper must follow special packing

requirements to prevent moisture from reaching the hazardous material. Even

after representing to buyers that he would ship according to the requirements of

this section, the Defendant failed to meet the packaging requirements, and made no attempt to meet the remaining requirements for shipping papers, marking, and labeling.

**B.     Statement of Facts**

At trial, the United States intends to present the following evidence:

1.     Defendant possessed a large amount of Sodium metals;

2.     Defendant offered Sodium metal for sale, using the ebay internet auction service, using the seller's name "vial-of-life";

3.     On the ebay web page, he indicated that he would ship the Sodium metal in accordance with Department of Transportation Hazardous Material Shipping Regulations, specifically identifying the exception at 49 C.F.R. § 173.13;

4.     In March 2004, the defendant, through the moniker "vial-of-life", offered 320 grams of Sodium metals for sale on ebay;

5.     The Sodium metal was purchased by a DOT Office of the Inspector General (OIG) Special Agent in an undercover capacity;

6.     The Special Agent was instructed, via e-mail communications signed "Kris", to send the fee to Kris Evertson, PO Box 876550, Wasilla, Alaska;

7.     The Special Agent provided the fee on April 2, 2004, and was

US v. EVERTSON
3:05-cr-63-JWS                          4

informed by "Kris" on April 17 that the hazardous material had been shipped;

8.      The package was intercepted in Portland, Oregon and opened by the FBI Hazardous Materials Response Team.  Inside the cardboard box was a paint can surrounded by styrofoam packing peanuts.  Inside the paint can was a number of plastic bags, each inside the other.  In the middle was a substance coated in wax.  The substance was tested by a local laboratory as Sodium metal;

9.      The packaging failed to follow the required DOT regulations for shipping of hazardous materials.  Moreover, there were no markings on the package to indicate hazardous materials, or to indicate transportation limitations to shippers, again in violation of the DOT hazardous material regulations;

10.     The package was shipped through Bogard Mail Services in Wasilla, Alaska.  When contacted, the owner of the Bogard Mail Services identified a photo of the defendant as the person who dropped off the package addressed to the undercover DOT OIG Special Agent.  She also informed the Agents that the same person had dropped off two more packages that were still in her possession.

11.     Those packages were addressed to Omar Alegria at an address in San Benito, Texas and John Brown in Buena Vista, Colorado.

12.     These packages also contained material that was later identified by the FBI Laboratory as Sodium metal.

US v. EVERTSON
3:05-cr-63-JWS                          5

13.     The packaging on these shipments were nearly identical to the shipment made to the undercover DOT OIG Special Agent, failing to meet the required DOT regulations for shipping of hazardous materials.  Also, there were no markings on the packages to indicate hazardous materials, or to indicate transportation limitations to shippers, again in violation of the DOT hazardous material regulations.

14.     Bogard Mail Services places a sticker on each package to advise the shipper as to special handling considerations for the package, including a specific check box for "hazardous material."  On the packages addressed to Omar Alegria and John Brown, the only check box completed was "other," along with the notation "N/A" indicating none of the special handling considerations, including hazardous material was applicable to the package.

### C.     Summary of the Charges

Defendant, Krister Evertson, is charged in the Indictment with three counts of offering for transportation a hazardous material while willfully failing to follow the Department of Transportation Hazardous Material regulations (49 U.S.C. §171 et seq) related to packaging, shipping papers, marking, labeling, and placarding, in violation of 49 U.S.C. § 5124.

### D.     Witnesses

US v. EVERTSON
3:05-cr-63-JWS                              6

At trial, the government will call some or all of the following:

1.    One or more of the federal law enforcement officers who were involved in the investigation of this case or who were involved in the arrest of the defendant;

2.    A chemist/laboratory technician employed by the Oregon Department of Environmental Quality to testify about the nature of the substance shipped by the defendant to the undercover DOT OIG Special Agent;

3.    A chemist/laboratory technician employed by the FBI Laboratory to testify about the nature of the substances offered for shipment by the defendant to Omar Alegira and John Brown;

4.    An expert on hazardous materials employed by the FBI to testify on the nature of hazardous materials, specifically Sodium.

5.    The owner/operator of Bogard Mail Services.

6.    An expert on hazardous materials transportation who will testify about purpose and operation of the Hazardous Material Regulations.

7.    Omar Alegria

8.    John Brown

9.    An official from the U.S. Postal Service to identify Post Office boxes assigned to the defendant.

US v. EVERTSON
3:05-cr-63-JWS                    7

E.     **Exhibits**

The government will offer some or all of the following exhibits at trial:

1.     Photographs of the sodium metal, packing and shipping material for the package shipped to "Jay Jenkins" per Count 1 of the indictment.

2.     Packing material from the shipment of Sodium metal addressed to "Omar Alegria" per Count 2 of the indictment.

3.     Packing material from the shipment of Sodium metal, addressed to "John Brown" per Count 3 of the indictment.

4.     The ebay internet webpage used by the defendant to offer 320 grams of Sodium for sale, the subject of Count 1.

5.     E-mail communications between the undercover OIG Special Agent and the seller of the Sodium that is the subject of Count 1.

6.     Copies of the Postal Money Order used to pay for the Sodium that is the subject of Count 1.

7.     Lab reports from the Oregon Department of Environmental Quality and the FBI Laboratory identifying the material found in three packages shipped by the Defendant as Sodium.

8.     Chain of custody documents for the material in three packages tested by the Oregon DEQ and FBI Laboratories.

US v. EVERTSON
3:05-cr-63-JWS                                8

9.      Packing materials, including cardboard boxes and paint cans, seized from the Defendant's home.

10.     U.S. Postal Service publication "A Customer's Guide to Mailing" seized from the Defendant's home.

11.     Notebook related to ebay sales seized from Defendant's home.

12.     Computer printout of 49 C.F.R. § 173.13 seized from Defendant's home.

## III.     LEGAL/EVIDENTIARY ISSUES

### A.     Expert Witness Testimony

#### General Standards

Expert opinions are admissible if they will assist the trier of fact to understand the evidence or determine a fact in evidence.  Rule 702, Fed. R. Evid. Expert opinions, as opposed to testimony by summary witnesses, may be based on facts or data not admissible into evidence.  Rule 703, Fed. R. Evid.

The court has broad discretion to determine whether to admit expert testimony.  United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987); United States v. Binder, 769 F.2d 595, 601 (9th Cir. 1985).

The government will give written notice to the defendant of its intention to elicit expert opinion testimony from chemists employed by the FBI Laboratory and the Oregon Department of Environmental Quality on Sodium metals, as well as an official from the U.S. Department of Transportation on the operation of the Hazardous Material Regulations found in 49 C.F.R. §171 et seq., §172 et seq., and §173 et seq.

## B.    Limits of Relevant Defenses

Rule 403, Fed. R. Evid., provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also, United States v. Brannon, 616 F.2d 413, (9th Cir. 1980), cert. denied, 447 U.S. 908.  The trial court has broad discretion in determining admissibility under Rule 403.  United States v. Moore, 552 F.2d 1068, 1079 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976).

An area of common exclusion involves attempts to confuse the issues or mislead the jury by introducing evidence of matters that do not establish a defense to the charged crimes.  See, United States v. Tidwell, 559 F.2d 262, 266-7 (5th Cir. 1977), cert. denied, 435 U.S. 942 [excluding evidence that defendant's

US v. EVERTSON
3:05-cr-63-JWS                        10

manipulation of bank funds was beneficial to bank on grounds of danger of confusion of issues and misleading jury where belief in benefit to bank was not a defense to misapplication of funds]; United States v. Johnson, 558 F.2d 744, 746-47 (5th Cir. 1977), cert. denied, 434 U.S. 1065 [excluding evidence of purported overpayment of taxes in fraudulent tax return prosecution on grounds of confusion of issues and improper appeal to emotions of jury].

        In addition, although the Ninth Circuit has long recognized that juries have the power to acquit a defendant regardless of the evidence of his guilt, (see, United States v. Simpson, 460 F.2d 515, 518-19 (9th Cir. 1972)), it has never recognized a right held by a defendant to seek such a verdict.  United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991).  Thus, because a defendant has no right to seek nullification, he has no right to present evidence relevant only to such a defense.  See, Zal v. Steppe, 968 F.2d 924, 930 (9th Cir.), Trott, J., concurring, cert. denied, 113 S.Ct. 656 (1992).

        While the defendant obviously has a right to present relevant defenses to the charges, he has no right to seek jury nullification and thus no right to introduce evidence which would be relevant only to nullification.  This includes any reference to the potential penalties which the defendant faces as a result of conviction.  As the court is well aware, this is an area where trial juries are

US v. EVERTSON
3:05-cr-63-JWS                          11

routinely instructed they are not to concern themselves with.  The defendant may

attempt to introduce evidence or make argument concerning the potential

penalties he faces in this case, including the nature of the charges (felony

offenses).  This should be excluded as irrelevant to the jury's mission here - to be

the finders of fact.

> ### C.    <u>Admissible Evidence</u>

The inclusion of Sodium metals on the hazardous materials list in 49

C.F.R. §172.101, as well as its designation as a packing group I material and the

limitations on transportation by cargo aircraft only are based on the potential

danger involved in transporting this material.

It is essential for the finder of fact to understand that this material is not

simply a line item on a bureaucrat's list, but a danger to the public if not properly

handled.  The government will provide this important information via expert

witnesses previously described.

> ### D.    <u>Potential 404(b) Evidence</u>

The Government will present evidence that the Defendant imported 10

tons of Sodium to Idaho.  In statements made to investigating agents, the

defendant indicated that  he had access to Sodium metals in Idaho and later in

Alaska.  When asked by the agents how he transported the Sodium metals to

Alaska, he replied "if I say how I got it here it might get me in bigger trouble."

The Government's position is that the Sodium in this case came from the

original 10-ton shipment.  Thus, this information relates to the case at trial, not a

separate act. Moreover, any such statements would be offered not to prove the

character of the defendant in order to show action in conformity therewith, but to

show his knowledge, or absence of mistake or accident.

RESPECTFULLY SUBMITTED this 3rd day of January, 2006, at

Anchorage, Alaska.

> TIMOTHY M. BURGESS
> United States Attorney
>
> s/Bryan Schoder
> BRYAN SCHODER
> Assistant U.S. Attorney
> 222 W. 7th Avenue, #9
> Anchorage, Alaska  99513-7567
> Phone : (907) 271-5071
> Fax: (907) 271-1500
> E-mail:Bryan.Schroder@usa.usdoj.gov
> WA# 21146

I hereby certify that on January 3,2006,
a copy of the foregoing Government's Trial
Memorandum was served electronically on:
Kevin McCoy.

s/ Bryan Schoder_____

US v. EVERTSON
3:05-cr-63-JWS                          13