Kevin F. McCoy
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 W. Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  vs.<br><br>KRISTER SVEN EVERTSON,<br><br>    Defendant. | NO. A05-0063 CR (JWS)<br><br>**KRIS EVERTSON'S TRIAL BRIEF** |

**I.  Introduction.**

    Kris Evertson submits this brief to assist the court at trial.  The purpose of this brief is to provide a background on the applicable law, to request a ruling on the motion to suppress evidence at Docket No. 18,  and to request a series of *in limine* orders.

**II.     Background.**

### The Indictment and Bill of Particulars

The indictment charges Mr. Evertson with three counts of violating laws and regulations pertaining to the transportation of hazardous material in violation of 49 U.S.C. § 5124. The bill of particulars at Docket No. 36 explains the government's claims. It alleges that Mr. Evertson willfully failed to comply with 49 C.F.R. § 173.13 on three occasions; first, when he allegedly shipped sodium metal via U.P.S. ground to Jay Jenkins on April 14, 2004 (Count 1), second, when he allegedly shipped sodium metal via U.P.S. ground to Omar Alegria on April 16, 2004 (Count 2), and finally, when he allegedly shipped sodium metal via U.P.S. ground to John Brown on April 16, 2004 (Count 3).

### Willful Verses Knowing Violations of Highly Technical Statutes

In 2004, 49 U.S.C. § 5124 outlawed **willful** violations of "this chapter or a regulation prescribed or order issued under this chapter[.]" At the same time, 49 U.S.C. § 5123 outlawed **knowing** violations of "this chapter or a regulation prescribed under this chapter[.]" These laws and the applicable regulations involve a highly regulated area, are densely written, and are difficult to understand. *See* Exhibit A (Table of Contents for Title 49, Chapter 51); Exhibit B (Table of Contents for 49 C.F.R. § 172 *et. seq.*); and Exhibit C (Table of Contents for 49 C.F.R. § 173 *et. seq.*). What matters here is that the distinguishing feature between a willful violation of these statutes and regulations and knowing violation of these statutes and regulations is the following: ignorance or mistake of law negates the willful *mens rea* but not the knowing *mens rea*.

There is no case law directly interpreting the meaning of willfulness as used in 49 U.S.C. § 5124.[1] However, courts analyzing other densely written statutes involving highly regulated conduct which risk ensnaring individuals engaged in apparently innocent conduct provide useful guidance. As to those statutes, willfulness requires proof the individual had specific intent to do or fail to do what he or she actually knows to be unlawful. *See e.g. Ratzlaf v. United States*, 510 U.S. 135, 137 (1994) (to establish willfulness "the government must prove that the defendant acted with knowledge that his conduct was unlawful."); *Bryan v. United States*, 524 U.S. 184, 194 (1998) (defendant must know that his or her act is unlawful); *Cheek v. United States*, 498 U.S. 192, 201-204 (1991) (good faith misunderstanding of the law or a good faith belief that one is not violating the law will negate willfulness). The requirement of actual knowledge is particularly important where the law allegedly violated is buried in a regulation instead of a statute. *United States v. Henderson*, 243 F.3d 1168, 1172 (9th Cir. 2001); *United States v. Derington*, 229 F.3d 1243, 1248 (9th Cir. 2000) (an instruction requiring knowledge of the unlawfulness of the act is necessary).

In contrast, knowing violations of "this chapter or a regulation prescribed under this chapter[.]" do not require proof that the defendant had the specific intent to do or fail to do what he or she actually knew was unlawful. Instead, the defendant need only have "actual knowledge of the facts giving rise to the violation[.]" 49 U.S.C. § 5123

---

[1] *United States v. Allied Chemical*, 431 F.Supp. 361 (W.D.N.Y. 1977) interprets an earlier statute dealing with the shipment of hazardous materials and notes only that Congress must have intended willfulness to be required before criminal liability could attach.

**III.     Mr. Evertson Requests A Ruling On The First Motion To Suppress Filed At Docket No. 18.**

One pretrial motion remains unresolved. At Docket No. 18, Mr. Evertson asked that all statements taken from him on May 26, 2004, be suppressed because they were involuntary and because they were taken in violation of *Miranda v. Arizona*, 384 U. S. 436 (1966) and *Dickerson v. United States*, 530 U.S. 428 (2000). Mr. Evertson renews that motion here for all the reasons stated at Docket No. 18. The Magistrate Judge has issued a report recommending that the motion be denied and establishing January 4, 2006, as the deadline for objections. This trial memorandum includes Mr. Evertson's objections to the Magistrate Judge's report and recommendation. Regardless, a copy of Mr. Evertson's statement is attached hereto at Exhibit Tab D (Evertson's Statement).

**IV.     Mr. Evertson Invoked his Right to Remain Silent Regarding How The Alleged Sodium Metal Was Transported to Alaska – Consequently This Statement Must Be Excluded.**

During his extensive interview with law enforcement while in custody at the Wasilla Police Department on May 26, 2004, Mr. Evertson admitted that he purchased 10 metric tons of sodium metal from China in 2001 or 2002. He advised that the sodium metal was shipped to either the Seattle or Tacoma, Washington port and was being stored in Salmon, Idaho. Hearing this information, law enforcement asked him how he was able to get a portion of the sodium metal from Idaho to Alaska. Mr. Evertson declined to answer the officer's question stating, "[i]f I say how I got it here it might get me in bigger trouble." Mr. Evertson respectfully requests that this court prohibit the government from introducing this statement at trial not only under Fed. R.

Evid. 401, 402, 403 and 404, but also because its introduction would be an impermissible use of Mr. Evertson's invocation of his Fifth Amendment right to remain silent.

A Fifth Amendment's privilege against self-incrimination contains the implicit promise that a defendant's post-arrest silence will not prove detrimental to the defendant. It is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37 (1966). Accordingly, the government may not refer to the defendant's assertion of his Fifth Amendment right at the time of his arrest and interrogation during trial because jurors may infer guilty from the defendant's refusal to answer law enforcement's questions. *Id*. at 468 n. 37; *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976). A defendant may waive his right to remain silent selectively, waiving it with regard to some, but not all topics of discussion. *United States v. Lopez-Diaz*, 630 F.2d 661, 664 n. 2 (9th Cir. 1980). A suspect may also revoke selectively a previously effected comprehensive waiver. *See United States .v Lorenzo,* 570 F.2d 294, 297-98 (9th Cir. 1978). The fact that a defendant invokes his right to silence and later waives it does not allow the government to comment on his previous invocation. *United States v. Velarde-Gomez*, 269 F.3d 1023 (9th Cir. 2001).

Here, Mr. Evertson was advised of his *Miranda* rights. He chose to freely answer most of the questions put to him by the law enforcement agents; however, he declined to answer a particular question regarding how pieces of the sodium metal ended up in Alaska. The government should not be allowed to introduce his assertion of his Fifth Amendment rights regarding this particular line of questioning.

V.  **Statements Made By Mr. Evertson That Are Irrelevant To The Charges Contained In The Indictment Should Be Excluded.**

On May 26, 2004, Mr. Evertson was arrested, advised of his rights and transported to the Wasilla Police Department where he was interviewed at length. During that interview Mr. Evertson made several statements that should be excluded under Fed. R. Evid. 401, 402, 403 and 404. Mr. Evertson requests that the following statements be excluded:

- Any statement concerning Thermo Tech Enterprises and Cary, North Carolina.

- Any statements made by Mr. Evertson or comments made by law enforcement concerning the use of sodium metal in connection with the manufacturing of methamphetamine.

- Statement by Mr. Evertson that during his experiments making sodium borohydride (SBH) using silicone metal, he had generated a very small quantity (1 gram) of hazardous waste.

- Statement by Mr. Evertson that he owned a Palladin Press book entitled "How to Create a New Identity."

The government has produced no evidence showing any connection between the offense conduct and Thermo Tech Enterprises or Cary, North Carolina. Neither the Thermo Tech Enterprises, nor Cary, North Carolina are associated with the three shipments contained in the indictment. This information is simply not relevant to any issue surrounding the instant charges.

In addition, the government possesses no evidence that Mr. Evertson was in any way involved in the manufacturing of methamphetamine. There is nothing in the record to suggest that Mr. Evertson has ever been involved with the possession or manufacturing of any type of controlled substance. The mere mention of the fact that sodium metal might be associated with the manufacturing of methamphetamine would be highly prejudicial.

Mr. Evertson is charged with willfully failing to properly label, placard and package a hazardous when wet material. Information concerning the bi-product produced by an unrelated experiment is not probative of the issue at hand and might confuse the jury.

Mr. Evertson's statement concerning the Palladin Press book should be excluded. There is no indication that Mr. Evertson used any false name or identification with regard to the listings, communications, shipping and payments concerning the three shipments alleged in the indictment. Nor is there any evidence that Mr. Evertson was attempting to conceal his true identity.

**VI.   Evidence Of Alleged Alias Use Is Inadmissible Because It Is Irrelevant And Confusing – Evidence Rule 402, 403.**

The indictment alleges that Mr. Evertson used other names – that he is also known as Chris Erickson and as Krister Erickson. Evidence that Mr. Evertson may have used other names is irrelevant and has a tendency to confuse. At all times material to the three counts in the indictment, Mr. Evertson used the name Erickson. Whether he ever used other names is irrelevant an should be excluded.

**VII.   Evidence Of Other Alleged Sodium Metal Sales And Other Alleged Sodium Metal Shipments Is Inadmissible – Evidence Rule 404(b), 403, 402 – Lack Of Adequate Foundation For Admissibility.**

The government has not provided Mr. Evertson with notice that it intends to introduce evidence of other alleged sodium metal sales or other alleged sodium metal shipments. *See* Fed.R.Crim.P. 404(b). However, as indicated, the indictment charges in three counts three

discrete shipments of alleged sodium metal. Each count in the indictment contains the following recital:

> Beginning on or about September 14, 2003, and continuing to on or about May 26, 2004, both dates being approximate and inclusive, in the District of Alaska, the defendant, KRISTER "KRIS" SVEN EVERTSON, a.k.a. Chris Erickson, a.k.a. Krister Erickson, knowingly offered for sale over the internet auction site eBay sodium metal, a Class 4.3, *Dangerous When Wet*, material (as set forth in 49 C.F.R. § 172.101).

Mr. Evertson respectfully submits that evidence of other alleged sodium metal sales and/or other alleged sodium metal shipments other than those charged in the indictment are inadmissible for a variety of reasons. First, in the absence of any evidence that alleged sodium metal was sold or shipped, evidence of shipments other than those alleged in the three counts is inadmissible for lack of foundation. In particular, unless the government can show that any earlier shipments failed to conform to the applicable laws and regulations, evidence of any such sales and any such shipments are inadmissible for lack of foundation.

Such evidence is also inadmissible under Fed.R.Evid. 404(b) and 403 if offered to prove that the prior shipments demonstrate that three charged shipments were shipped in conformity with the earlier shipments. Extrinsic acts evidence is disfavored, *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993), and the admission of Fed.R.Evid. 404(b) material "must be narrowly circumscribed and limited[.]" *United States v. Garcia-Orozco*, quoting *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985). "The rule is designed to avoid 'a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving

of punishment.'" *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989) quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence*, § 404[04], at 404-29 (1988).

Fed.R.Evid. 404(b) forbids the use of evidence of other crimes or wrongs unless necessary to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Such evidence is admissible only if it (1) tends to prove a material point; (2) is not too remote in time; (3) is based on sufficient evidence; and (4) is in some cases similar to the offense charged. *United States v. Bibo-Rodriquez*, 922 F.2d 1398, 1400 (9th Cir.), *cert. denied*, ___ U.S. ___, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). Moreover, any evaluation of such evidence must be tempered with a Fed.R.Evid. 403 analysis. *Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988).

Evidence of other alleged sodium metal sales and evidence of other alleged sodium shipments is inadmissible because it is not based on sufficient evidence and because other sales and/or other shipments fail to establish that Mr. Evertson knew that his conduct was unlawful.

**VIII.   Items Seized From Mr. Evertson's Residence Which Are Unrelated To The Charges Contained In The Indictment Should Be Excluded.**

On May 26, 2004, police officers and federal agents executed a search warrant on Mr. Evertson's residence located at 3030 North Eureka Circle in Wasilla, Alaska. During the search, law enforcement seized 36 groups of items categorized as documentary and related evidence and 6 items containing samples of chemical compounds. (See Tab C of Defendant's Motion to Suppress at Docket No.25). The following items are the subject of this motion in limine:

9

- Jar of Sodium Cyanide
- Nitric Acid
- Muratic Acid
- Battery Acid
- Five-gallon container of Digyme
- Unknown substances in the garage
- Business card for Intermountain Self Storage

Mr. Evertson respectfully requests a protective order prohibiting the government from referring to the above items during his trial. The items are not relevant to the charges alleged by the government and have no probative value. The charges filed against Mr. Evertson make no reference to any chemical materials other than sodium metal. The government does not allege that Mr. Evertson transported or caused to be transported any other chemical or hazardous material. Any reference to the above items should be excluded under Fed. R. Evid. 401, 402, 403 and 404.

In addition, two handwritten consent to search forms were executed by Mr. Evertson during the search of his residence. One form allowed the agents to search all vehicles on the premises; the other allowed the agents to seize the above listed chemicals, as well as, any other chemicals located on the property. Mr. Evertson respectfully requests that the government be prohibited from referring to or introducing these forms during the trial under Fed. R. Evid. 401, 402 and 403. Again the items listed in these forms are unrelated to the charges at hand and

offer no probative value as to whether Mr. Evertson willfully violated the regulations pertaining to the shipping of small amounts of hazardous materials.

### IX. Actions Taken By eBay Following Disclosure Of Federal Investigation.

Mr. Evertson respectfully requests that the government be prohibited from introducing into evidence any actions taken by eBay following the initiation of the federal investigation, i.e., the shutting down or banning of Mr. Evertson's auction listings for sodium metal. These actions represent eBay's own discretionary, administrative actions based on their own policy and procedures. EBay's actions are not based on an independent analysis or investigation that Mr. Evertson had in fact not complied with the required shipping requirements. Therefore, evidence concerning any actions taken by eBay would be more prejudicial than probative under Fed. R. Evid. 403.

Dated at Anchorage, Alaska this 3rd day of January 2006.

Respectfully submitted,

s/KEVIN F. McCOY
Assistant Federal Defender
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Phone:      907-646-3400
Fax:        907-646-3480
E-Mail:     kevin_mccoy@fd.org

<u>Certification</u>:
I certify that on January 3, 2006,
a copy of *Kris Evertson's Trial Brief*
Was Hand Delivered to:

Bryan Schroder
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

_____
Karolyn Miller